IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MELISSA NIGRO :

    Plaintiff,

v. : Case No. 3:21-CV-337-WHR

WRIGHT PATTERSON AIR : JUDGE WALTER H. RICE
FORCE BASE, ET AL.,

    Defendants. :

---

DECISION AND ENTRY SUSTAINING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, DOC. #32; JUDGMENT TO ENTER IN FAVOR OF DEFENDANTS AND AGAINST PLAINTIFF; TERMINATION ENTRY

---

This matter comes before the Court on a Motion for Summary Judgment by Defendants Wright Patterson Air Force Base, Frank Kendall, and the United States Air Force (collectively, "Defendants"). Doc. #32. Plaintiff Melissa Nigro has filed a Response in Opposition to the Motion for Summary Judgment. Doc. #36. Defendants filed their reply. Doc. #37. For the reasons below, Defendants' Motion for Summary Judgment is SUSTAINED.

**I.    Procedural Background**

Plaintiff Melissa Nigro ("Nigro" or "Plaintiff") filed suit against Defendants on December 16, 2021, asserting claims of Disability Discrimination (Count I); Retaliation under the Americans with Disabilities Act ("ADA", Count II); hostile work

environment (Count III); Racial Discrimination (Count IV); and Sexual Discrimination (Count V). Doc. #1. After a protracted four-month delay in serving Defendants, *see* Docs. ##4–9, service was eventually accomplished against all Defendants by May 16, 2022. *See* Docs. ##10–12. Following an extension, Defendants filed their Answer on August 23, 2022, Doc. #16, and the Court held a preliminary pretrial conference on September 16, 2022. Doc. #17.

The discovery deadline was originally set for March 31, 2023, *id.*, but, upon joint motion of the parties, Doc. #19, was extended to September 26, 2023. Doc. #20. After the discovery period, Defendants sought and received five extensions to the deadline for summary judgment motions. *See* Docs. ##22, 26–28, 31. Ultimately, they filed their Motion for Summary Judgment a day late on January 16, 2024. Doc. #32. Nigro sought and received two extensions to file a response to the motion, Docs. #33 & 35, before filing her Response in Opposition two days late on March 23, 2024. Doc. #36. Defendants filed their reply on April 4, 2024. Doc. #37.

The motion is ripe for review.

## II. Factual Background

Nigro is a white, Caucasian female born in 1965. Doc. #30-2, PageID #248. She suffers from gastroesophageal reflux disease (GERD), chronic obstructive pulmonary disease (COPD), and asthma, and experienced a shoulder injury during her employment on Wright Patterson Air Force Base ("WPAFB"). *Id.* at PageID #351.

In January 2018, Nigro began working on WPAFB for the United States Air Force Life Cycle Management Center ("AFLCMC"), on a career conditional

2

appointment as an Operations Research Analyst in the Financial Management Division. Doc. #30-1, PageID #347. Her first-level supervisor was Wilbur Jameson ("Jameson"). Doc. #30-2, PageID #249. Jameson "was aware of [her] race/color, sex, and age after she arrived in January 2018." Doc. #24-6, PageID #196–98; *accord* Doc. #29-4, PageID ##255–56. Nigro's coworkers were a mix of races and sexes, which included her supervisor Jameson (a black male); Doc. #30-2, PageID #349; an African American female named Alicia; Doc. #24, PageID ##100–01; and six (6) white individuals of both sexes. *See* Doc. #32, PageID #365; *see also* Doc. #30-2, PageID ##349–50 (stating that Nigro's four fellow probationary employees, two male and two female, were white). Nigro does not recall any instances where Jameson made derogatory comments about her race, sex, or age during her tenure with AFLCMC. Doc. #24, PageID #110.

There is some dispute over whether the Air Force, though its employee Jameson, "was aware[, through visual observation and personnel records,] of [Nigro's] gastronomical medical condition when she arrived in January 2018, . . . [and] her shoulder injury . . . in July 2019." *Compare* Doc. #30-2, PageID #350 (detailing Nigro's assertion of Jameson's knowledge of her conditions) *with* Doc. #29-4, PageID ##256–58. Regardless, neither Nigro's second nor third-line supervisor was aware of her conditions, *see* Doc. #29-5, PageID #267; Doc. #29-1, PageID #235, and she didn't otherwise "notify the Air Force" about her preexisting disabilities until she "submitted . . . [Family and Medical Leave Act] paperwork . . . in 2019." Doc. #24, PageID #111. Her Family and Medical Leave

3

Act ("FMLA") request, Doc. #29-10, dated September 27, 2019, was roughly twenty (20) months into her conditional appointment and is the first documented instance requesting an accommodation for her disabilities. Two months prior, Nigro informed Jameson of her shoulder injury and began requesting time off for physical therapy. Doc. #24-6, PageID #196.

Throughout her term of employment, Nigro dealt with incidents in the workplace resulting from the leave she took for all the aforementioned disabilities and family needs. Doc. #24, PageID ##113–16. The specific incidents, purported to be harassment or discrimination, cover a broad range of dates and actions. First, Jameson consistently refused to allow Nigro to either telework or participate in the office physical training program, but did not deny other coworkers of different ages, races, and sexes to do so. Doc. #30-2, PageID #352. Second, Jameson repeatedly made comments to Nigro regarding her continued absences. This included commentary on "how old her son would have to be before he could start taking care of himself," *id.*, and statements such as "oh, [Nigro's] here today. [She] finally came into the office." *Id.* at PageID #355. Third, and finally, Nigro was required to sign in and out of the office when her coworkers were not. Doc. #24, PageID ##99–100.

In 2019, Nigro was not at work for roughly one quarter of the calendar year. Doc. #29-16, PageID #345. In total, Nigro was absent 470 hours in total, or approximately 58.75 workdays. *Id.* Excluding holidays, this was spread across 160.75 hours (~20 days) of annual leave, 140.75 hours (~17 days) of sick leave, and 168.5 hours (~21 days) of leave without pay. *Id.* On January 6, 2020, two

4

days before the end of her probationary period, Nigro was terminated for excessive absenteeism. Doc. #29-14, PageID #210.

On January 4, 2021, Nigro filed a formal complaint of discrimination against the Air Force. Doc. #24-1; Doc. #29-14, PageID #329. The complaint was investigated by the Department of Defense Human Resources Activity. Doc. #29-14, PageID #329. On September 19, 2021, a Final Agency Decision ("FAD") was issued. *See id.* The FAD found that Nigro established that she had a disability, however she failed to show that she was harassed—via a hostile work environment—based on any of her protected classes, and that her termination for cause was not pretextual "for discrimination based on race, color, sex, age or disability." *Id.* at PageID #339. Nigro then brough the instant suit. Doc. #1.

## III. Legal Standard

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323; *see also Boretti v. Wiscomb*, 930 F.2d 1150, 1156 (6th Cir. 1991).

"Once the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary

to resolve the difference at trial." *Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1245 (6th Cir. 1995); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324. "The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff." *Michigan Prot. & Advocacy Serv., Inc. v. Babin*, 18 F.3d 337, 341 (6th Cir. 1994).

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether a genuine dispute of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. *Id.* at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe; credibility

6

determinations must be left to the factfinder. 10A Wright, Miller & Kane, Federal Practice and Procedure § 2726 (3d ed. 1998).

In determining whether a genuine dispute of material fact exists, a court need only consider the materials cited by the parties. Fed. R. Civ. P. 56(c)(3). "A district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989). If it so chooses, however, a court may consider other materials in the record. Fed. R. Civ. P. 56(c)(3).

A party seeking to avoid summary judgment may not rely on an affidavit contradicting their earlier deposition testimony submitted in an attempt to create an issue of material fact. *Jones v. General Motors Corp.*, 939 F.2d 380, 385 (6th Cir. 1991). When such an affidavit is subject to a motion to strike, a court should "use a scalpel, not a butcher knife, . . . strik[ing] portions of affidavits that do not satisfy the requirements of Rule 56(e)." *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 593 (6th Cir. 2009) (internal quotation omitted).

### IV.     Legal Analysis

Defendants have moved for summary judgment on all five claims in this case. Doc. #32. Nigro, in her response, opposes the Motion for Summary Judgment. Doc. #36. The Court will analyze the merits of the motion regarding each claim beginning with sex discrimination and race discrimination and concluding with the disability discrimination claims.

7

### a. Counts IV-V: Race and Sex Discrimination

Nigro alleges that Defendants discriminated against her due to her race and sex in violation of 42 U.S.C. § 2000e, *et seq.*, also known as Title VII. Doc. #1, PageID #5-6.

Title VII of the Civil Rights Act prohibits employers from discriminating or retaliating against an employee because of protected characteristics. *See generally* 42 U.S.C. § 2000e, *et seq.* Specifically, Title VII set forth that:

> It shall be an unlawful employment practice for an employer—
> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

*Id.* at §2000e-2(a). "In general, a Title VII plaintiff may establish a case of unlawful discrimination through either direct or circumstantial evidence." *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 n.5 (6th Cir. 2008); *accord Tennial v. United Parcel Serv.*, 840 F.3d 292, 302 (6th Cir. 2016) (recognizing the same in the context of race discrimination). The Sixth Circuit differentiates direct and circumstantial evidence of discrimination thusly:

> Direct evidence of discrimination is "that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999). Circumstantial evidence, on the other hand, is proof that does not on its face establish discriminatory animus, but does allow a

8

> factfinder to draw a reasonable inference that discrimination occurred. *Kline* [*v. Tenn. Valley Auth.*, 128 F.3d 337, 348 (6th Cir. 1997)].

*Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (en banc) (alteration in original).

However, when a plaintiff lacks direct evidence of discrimination, courts analyze indirect or circumstantial evidence by applying the tripartite McDonnell-Douglas burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). The first step requires the plaintiff to set out a prima facie case of discrimination. *See, e.g., Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 283 (6th Cir. 2012) (citing *McDonnell Douglas Corp.*, 411 U.S. 792) (discussing prima facie case presentation in age discrimination case). Establishing a prima facie case of race and sex discrimination necessitates a showing by the Plaintiff that: "(1) she is a member of a protected class; (2) she was subject to an adverse-employment action; (3) she was qualified for the position; and (4) she was replaced by someone outside the protected class or was treated differently than similarly situated non-protected employees." *Peeples v. City of Detroit*, 891 F.3d 622, 634 (6th Cir. 2018) (citation omitted). Provided that the prima facie case has been presented, the burden shifts to the Defendants "'to articulate some legitimate, nondiscriminatory reason' for the employment decision." *Id.* (citing *O'Donnell v. City of Cleveland*, 838 F.3d 718, 726 (6th Cir. 2016) (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981))). The burden then shifts back to the Plaintiff to show the cited reason was pretextual. *O'Donnell*, 838 F.3d at 727 (citations omitted).

9

There is no dispute between the parties that Nigro (1) belongs to a protected class of race and sex; (2) was qualified for her position; and (3) suffered an adverse employment action. Nigro is a white female. Doc. #1, PageID #2. She had the requisite education and experience to complete the basic functions of her position. Doc. #29-4, PageID #257. Finally, she was terminated from her probationary position. Doc. #24-8, PageID #210. That leaves only the final element: being "replaced by someone outside the protected class or [being] treated differently than similarly situated non-protected employees." *Peeples*, 891 F.3d at 634. Nigro does not claim that she was replaced by someone with a different race, sex, or physical ability, but rather that she was treated differently than her co-workers. Doc. #1, PageID #6; Doc. #24, PageID ##98–101; Doc. #24-6, PageID #198–99.

"To constitute similarly situated employees, the individuals with whom [Nigro] seeks to compare her treatment 'must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct *without such differentiating or mitigating circumstances that would distinguish their conduct or the employers['] treatment of them.*'" *Goldblum v. Univ. of Cincinnati*, 62 F.4th 244, 255 (6th Cir. 2023) (quoting *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 364 (6th Cir. 2010)) (emphasis added). While Nigro is "not required to demonstrate an exact correlation between [her]self and others similarly situated," she still must show she and "her proposed comparators [a]re similar *in all relevant respects* . . . and . . . engaged in acts of comparable seriousness." *Bobo v. UPS*, 665 F.3d 741, 751 (6th Cir. 2012) (citing *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 710 (6th

10

Cir. 2006)) (internal citations omitted) (emphasis added). While "[d]ifferences in job title, responsibilities, experience, and work record can be used to determine whether two employees are similarly situated," *Leadbetter v. Gilley*, 385 F.3d 683, 691 (6th Cir. 2004), the Court is free to consider other factors it deems relevant. *See Redlin v. Grosse Pointe Pub. Sch. Sys.*, 921 F.3d 599, 610 (6th Cir. 2019).

Nigro has identified five purported comparators: four fellow probationary employees, Doc. #30-2, PageID ##349–50, and one non-probationary employee. Doc. #24, PageID #100. However, none of the identified individuals serve as a proper comparator for the purposes of a Title VII race or sex discrimination claim. First, for her racial discrimination claim, the only person Nigro cites as a non-white comparator is a coworker named Alicia. Doc. #24, PageID ##100, 106. However, since Alicia was not a probationary employee like Nigro, *id.*, she was not "similarly situated" for the purposes of proving a discrimination claim. Comparably, all the identified probationary comparators cannot be used to show racial discrimination as they were white. *Id.* at PageID ##106–07; Doc. #30-2, PageID #349–50. Further, as these four comparators offer a 50/50 split of males and females, and as Nigro has not provided any evidence to show that she and the female comparators were treated differently than the male comparators, she has failed to demonstrate that there was sex-based discrimination behind her termination.

Nigro nakedly asserts that "all of [her comparators] were afforded the opportunity to participate in telework and physical training that was denied to [her]." Doc. #36, PageID #393. However, as the Court previously observed, Rule 56

11

"requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324. "The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff." *Babin*, 18 F.3d at 341. Nigro's assertion, which is unsupported by any evidence or other citations, is directly addressed by evidence provided by the Defendants. The investigative summary completed in response to Nigro's in-house complaint at AFLCMC observed that "Complainant [Nigro] . . . identified *no specific employee* permitted to telework or take part in the physical fitness program." Doc. #30-2, PageID #352. Additionally, "[a]lthough not an official policy, [Jameson] claims no probationary employees are allowed to telework while learning their job." *Id.* at PageID #353. In contrast, Nigro has not provided any evidence that would lead a jury to reasonably find in her favor as the only materials provided to support her arguments are her unverified pleadings. Doc. #36, PageID ##393–94.

Even if the Court were to accept, for the sake of argument, that any of the aforementioned employees Nigro offers as comparators were "similarly situated" to her in "all relevant respects," see *Bobo*, 665 F.3d at 751, she has not demonstrated that any of the comparators were "engaged in acts of comparable seriousness," *id.*, namely, excessive absenteeism. And, as previously observed, Nigro has presented no evidence that any other probationary coworker who was also supervised by Jameson, regardless of race or sex, was permitted to keep their employment despite

12

accruing a comparable level of absences. Thus, the Court SUSTAINS the Motion as to Counts IV–V.

### b. Counts I–III: ADA – Disability Discrimination, Retaliation, and Hostile Work Environment

Nigro alleges that her termination by Defendants was disability discrimination under the ADA, Doc. #1, PageID ##3–4, as well as unlawful retaliation for her requesting reasonable accommodations for her disabilities. *Id.* at PageID #4. Further, she also asserts that Defendants, as her employers or supervisors, created a hostile work environment due to their actions surrounding her disabilities. *Id.* at PageID #5.

Under the ADA, no employer "shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To make a prima face case for a discriminatory firing based on being disabled, Nigro must show "(1) she is disabled; (2) she was otherwise qualified for the position, with or without reasonable accommodation; (3) she suffered an adverse action; (4) the employer knew or had reason to know of her disability; and (5) she was replaced or the job remained open" or "similarly situated non-disabled employees were treated more favorably." *Rosebrough v. Buckeye Valley High Sch.*, 690 F.3d 427, 431 n.2 (6th Cir. 2012) (quotations and citations omitted). ADA claims are also "evaluated under the McDonnell-Douglas burden shifting regime," *Yarberry v. Gregg Appliances, Inc.*, 625 F. App'x 729, 735 (6th Cir. 2015) (citations omitted), and if a prima facie

13

case of discrimination can be presented, "the burden shifts to the defendant 'to articulate some legitimate, non-discriminatory reason' for its actions." *Talley v. Fam. Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1105 (6th Cir. 2008) (quoting *Gribcheck v. Runyon*, 245 F.3d 547, 550 (6th Cir. 2001)). "If the defendant can satisfy its burden, the plaintiff must show by a preponderance of the evidence that the proffered explanation is a pretext for discrimination." *Id.* (citing *Gribcheck*, 245 F.3d at 550).

While the ADA proscribes a myriad of situations as discriminatory, the instant case only involves "not making reasonable accommodations to the *known physical and mental limitations* of an otherwise qualified individual with a disability," unless said accommodations would "impose an undue hardship" on the employer. 42 U.S.C. § 12112(b)(5)(A) (emphasis added). "Generally, an ADA plaintiff 'bears the initial burden of proposing an accommodation and showing that [such] accommodation is objectively reasonable.'" *Kleiber v. Honda of Am. Mfg.*, 485 F.3d 862, 870 (6th Cir. 2007) (quoting *Hedrick v. W. Reserve Care Sys. & Forum Health*, 355 F.3d 444, 457 (6th Cir. 2004)). "Once an employee makes such a request [for reasonable accommodations, . . . the employer is obligated by law to engage in an interactive process: a meaningful dialogue with the employee to find the best means of accommodating that disability." *Brumley*, 909 F.3d at 840 (quoting *EEOC v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 621 (5th Cir. 2009) (internal quotation marks and citation omitted)).

14

The parties do not contest that elements one, three, and four of a disability discrimination claim, *Rosebrough*, 690 F.3d at 431, have been adequately shown: Nigro is disabled, she suffered an adverse action—namely termination from her position—and the Defendants were aware of her disability. *See* Doc. #32, PageID #374; *see also* Doc. #24, PageID #111.[1] However, the parties disagree that Nigro was qualified for the position and that similarly situated non-disabled employees were treated better. *See* Doc. #32, PageID #374; Doc. #36, PageID ##396-401.

When multiple elements of the ADA claim are disputed, the failure of any one element is enough to defeat the claim. Regarding the second element, Defendants contend that Nigro's excessive absenteeism made her unable to complete the essential functions of her position and her work was left to other coworkers to complete. Doc. #32, PageID #374 (citing Docs. #29-4, PageID #258; #29-13, PageID ##312-27). This included repeated occurrences where the customers Nigro was supporting either completed her work for her or "spoon fed" her the information her position was responsible for managing. Doc. #29-13, PageID #313. Nigro contests this and cites a bevy of caselaw meant to determine the proper length of time allowed before an employee's absence becomes unreasonable. *See* Doc. #36, PageID ##396-98 (citations omitted).

---

[1] In her Response in Opposition to the Motion for Summary Judgment, Doc. #36, Nigro relies on a different element test addressing failure to accommodate claims. *Id.* at PageID #395 (citing *Kirilenko-Ison v. Bd. Of Edu. Of Danville Indep. Schs.*, 974 F.3d 652, 669 (6th Cir. 2020) (citing *Brumley*, 909 F.3d at 839)). As her first claim involves simple disability discrimination, the correct test is applied here.

However, she does not provide any evidence to counter Defendants' claim that her absenteeism led to her not completing the essential functions of her job. Instead, Nigro only contends that the argument "must fail because, taken to its logical conclusion, any amount of absenteeism that negatively impacts work performance or prevents an employee from being able to work for a period of time . . . [would] contradict[] this Court's holding that the ADA protects a plaintiff's right to reasonable accommodations." Doc. #36. Nigro then cites caselaw that "[a]pproved medical leave may be a reasonable accommodation and an inability to work while on such leave does not mean that an individual is unqualified." *Id.* (quoting *Terre v. Hopson*, 708 F. App'x 221, 228–29 (6th Cir. 2017) (citation omitted). This argument is both unpersuasive and does not address the substance of Defendants' argument. First, Nigro did not request FMLA leave until the end of September 2019. Doc. #29-10. Based on the leave analysis, Nigro had already taken approximately 298.5 hours of leave by that date. *See* Doc. #29-16 (subtracting total leave taken after the pay period ending "28-Sep-19" from her annual leave total of 470 hours). So, even were the Court to accept that argument, the remaining 171.5 hours she took remain well in excess of the reduced work hours requested in her FMLA request. Doc. #29-10, PageID #304. *See also* Doc. #37, PageID 406 (citing Doc. #29-14, PageID #332) (stating that the 18.25 hours of FMLA leave Nigro took was not a significant portion of her overall absenteeism).

Nigro also asserts that she was still qualified for the position had Defendants allowed her reasonable accommodations such as teleworking. Doc. #36, PageID

16

#398-400. However, while Nigro cites caselaw addressing how employers and employees navigate the discussion surrounding a request for reasonable accommodations, she does not provide any evidence showing that her requests to telework, or any other requests made of Defendants, met her initial burden of requesting reasonable work accommodations due to her disability. While no "magic words" are needed to successfully inform an employer of a disability and a need for accommodation, *Leeds v. Potter*, 249 F. App'x 442, 449 (6th Cir. 2007) (citing *Smith v. Henderson*, 376 F.3d 529, 535 (6th Cir. 2004)), Nigro "must still show that . . . 'a causal relationship existed between the disability and the request for accommodation.'" *Id.* (quoting *Gerton v. Verizon S. Inc.*, 145 Fed. Appx. 159, 164 (6th Cir. 2005)). Nigro has provided no evidence showing that any requests made before the submission of the FMLA paperwork satisfy that requirement and thus do not constitute a request for accommodation.

Finally, regarding element five, Nigro does not provide evidence that her job was left vacant or filled by a non-disabled person, nor does she provide a "similarly situated non-disabled employee[ who] w[as] treated more favorably." *Rosebrough*, 690 F.3d at 431 n.2. Thus, the Court SUSTAINS the Motion as to Count I.

Regarding Count II, Retaliation, the ADA states that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this Act or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this Act." 42 U.S.C. § 12203(a). When there is no direct evidence of

retaliation, the Court uses the McDonnell-Douglass burden shifting test to analyze the claim. *See Rorrer v. City of Stow*, 743 F.3d 1025, 1046 (6th Cir. 2014) (citing *A.C. Shelby Cnty. Bd. Of Educ.*, 711 F.3d 687, 697 (6th Cir. 2013)). This requires that the plaintiff show "(1) the plaintiff engaged in activity protected under the ADA; (2) the employer knew of that activity; (3) the employer took an adverse action against plaintiff; and (4) there was a causal connection between the protected activity and the adverse action." *Id.*

The parties disagree on which of Nigro's actions constitutes protected activity under the ADA: Defendants contend her FMLA request was the protected activity, Doc. #32, PageID #375, whereas Nigro contends that her requests for an accommodation were the protected activity. Doc. #36, PageID #401. However, under either interpretation, Nigro has failed to meet the initial burden required under the McDonnell-Douglass test. As discussed previously, Nigro failed to sufficiently show a causal relationship between her purported requests for accommodation, such as teleworking, and her disability, and without that showing Nigro cannot argue that her termination was in retaliation for making those requests. The only activity that meets that causal connection is her FMLA request, and Nigro has not provided sufficient evidence to show that her request for FMLA leave had a causal connection to her termination. Defendants have shown that Nigro's FMLA leave amounted to 18.25 hours, Doc. #29-14, PageID #332, which constituted less than four percent (4%) of her total absences for calendar year 2019. *See* Doc. #29-16. Additionally, as Defendants pointed out, even a retroactive application of the accommodations

18

requested in the FMLA form, Doc. #29-10, PageID #304, would only "reduce[ Nigro's leave usage] from about 59 days of leave to about 49 days of leave or [sic] (ten weeks)." Doc. #37, PageID #406. Thus, the Court SUSTAINS the Motion as to Count II.

Finally, because Nigro did not address Defendants' arguments regarding her claim of hostile work environment (Count III), the claim in considered waived. *See Alexander v. Carter*, 733 F. App'x 256, 261 (6th Cir. 2018) ("When a plaintiff fails to address [a claim] in response to a motion for summary judgment, the claim is deemed waived.") (citations and internal quotations omitted) (alteration in original).

### V.  Conclusion

For the reasons set forth above, the Court SUSTAINS Defendant's Motion for Summary Judgment., Doc. #32.

Judgment is to be entered in favor of Defendant and against Plaintiff.

The captioned case is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

Date: May 31, 2024

_____
WALTER H. RICE
UNITED STATES DISTRICT JUDGE